**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email: sbogdanovich@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAKE WEBER, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br><br>        v.<br><br>GAMESTOP, INC.,<br><br>                         Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jake Weber ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated. Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THIS ACTION

1. This is a class action suit brought against GameStop, Inc. ("Defendant") for violating the California Digital Property Rights Transparency Law, California Business & Professions Code § 17500.6. GameStop, Inc., ("Defendant" or "GameStop") is "the world's biggest game retailer,"[1] and sells a variety of its video games through both its brick-and-mortar stores, as well as its website, https://www.gamestop.com/. On its website, Defendant tells consumers the option to "buy" or "purchase" digital copies of the many of the same video games they can purchase physical copies of. But when consumers "buy" digital versions of video games through GameStop's website, they don't receive the same property rights they would have, had they purchased physical copies of the games through its brick-and-mortar stores. Instead, in many cases, they receive "a non-exclusive, non-transferable, revocable license," to access the game, which is maintained the video game manufacturer's sole discretion.[2]

2. California law prohibits this kind of bait and switch. The California legislature recently enacted digital property rights transparency law that became effective on January 1, 2025. Cal. Bus. & Prof. Code § 17500.6. The law declares that "it shall be unlawful for a seller of a digital good to advertise or offer for sale a digital good to a purchaser with the terms 'buy,' 'purchase,' or any other term which a reasonable person would understand to ***confer an unrestricted ownership interest in the digital good***... unless" one of two conditions is met. Cal. Bus. & Prof. Code § 17500.6(b)(1)(emphasis added). The seller needs to either (A) obtain "***an affirmative acknowledgment from the purchaser*** indicating... [t]hat the purchaser is receiving a

---

[1] Ben Gilbert, *The world's biggest video game retailer, GameStop, is dying: Here's what led to the retail giant's slow demise*, BUS. INSIDER (Jan. 23, 2020), https://www.businessinsider.com/gamestop-worlds-biggest-video-game-retailer-decline-explained-2019-7.

[2] Nintendo, United States Nintendo Account User Agreement, https://accounts.nintendo.com/term/eula/US?lang=en-US.

1  license to access the digital good [and that]... ***access to the digital good may be unilaterally***

2  ***revoked by the seller***," or (B), give the consumers "a clear and conspicuous statement that …

3  [s]tates in plain language that 'buying' or 'purchasing' the digital good is a license." Cal. Bus. &

4  Prof. Code § 17500.6(b)(1)(A)-(B)(emphasis added). Defendant violated this law by advertising to

5  consumers that they could "buy," "purchase," and "Add to Cart," video games on its website

6  without satisfying either of these two conditions.

7      3.      Accordingly, Plaintiff brings claims against Defendant individually and on behalf of

8  a class of all others similarly situated for a (1) violation of California's Unfair Competition Law,

9  Cal. Bus. & Prof. Code § 17200, *et seq.;* (2) violation of California's False Advertising Law, Cal.

10  Bus. & Prof. Code § 17500, *et seq.*

11  **THE PARTIES**

12      4.      Plaintiff is a citizen of California, residing in Lincoln, California. Plaintiff

13  purchased a digital copy of *Elden Ring—Nightreign* on Defendant's website on June 23, 2025.

14  Before this purchase, he encountered a purchase flow substantially similar to the one depicted in

15  this complaint.

16      5.      Defendant GameStop, Inc. ("GameStop" or "Defendant") is a Minnesota

17  corporation with its principal place of business at 625 Westport Parkway, Grapevine, Texas 76051.

18  Defendant develops, owns, and operates gamestop.com, which is used throughout California and

19  the United States.

20  **JURISDICTION AND VENUE**

21      6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as

22  amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action

23  where the aggregate claims for all members of the proposed class are in excess of $5,000,000.00,

24  exclusive of interests and costs, there are over 100 members of the putative class, and at least one

25  class member is a citizen of a state different from Defendant.

26      7.      This Court has personal jurisdiction over the parties because Plaintiff resides in

27  California, is a citizen of California, and submits to the jurisdiction of the Court, and because

28  Defendant has, at all times relevant hereto, systematically and continually conducted, and

1    continues to conduct, business in California, including within this District.  Defendant therefore has

2    sufficient minimum contacts with this state, including within this District and/or intentionally

3    availed itself of the benefits and privileges of the California consumer market through the

4    promotion, marketing, and sale of its products and/or services to residents within this District and

5    throughout California.

6          8.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because

7    a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this

8    District.  Also, Plaintiff resides in this District and purchased Defendant's digital goods in this

9    District.  Moreover, Defendant systematically conducts business in this District and throughout the

10   State of California, and it distributed, advertised, and sold its digital goods to Plaintiff and Class

11   Members in this State and District.

12                              **FACTUAL BACKGROUND**

13   **California's Digital Property Rights Transparency Law**

14         10.    In the old days, when consumers "bought" something, they could reasonably

15   assume they would obtain the full 'bundle of sticks' we commonly know as property ownership.[3]

16   In other words, if a consumer walked into a brick-and-mortar video store and "bought" a physical

17   VHS tape, they knew it was theirs to keep. Consumers could rest reasonably assured that they

18   could place the VHS tape on their shelf and they could retrieve it whenever they wanted. If after a

19   few years, they wanted to watch an old movie they purchased, they could place the tape in the VHS

20   player, and it would play.

21         11.    However, nowadays, with digital goods, that is no longer a given. Many digital

22   good providers that "sell" digital goods do not actually transfer full 'bundle of sticks.' Instead, they

23   only grant *licenses* to access the digital content, which may or may not be revoked.

24

25

26

27   _____
     [3] "The 'bundle of sticks' metaphor [is] often is used to describe property, with each stick
     representing a right, privilege, power or immunity." *Pac. Gas & Elec. Co. v. Hart High-Voltage*
28   *Apparatus Repair & Testing Co.*, 18 Cal. App. 5th 415, 427 (2017).

12.     This misunderstanding came to a fore in late 2023 and early 2024, when millions of gamers discovered that their game *The Crew* had been shut down.[4] Ubisoft, a French video game publisher, delisted (removed from digital storefronts) and subsequently shut down the servers (intentionally stopped the operation of the computer systems that host online services or applications, effectively making them unavailable) of *The Crew*.[5] Upset by the news of the video game's server being shut down, consumers and users of the game to start a movement named "Stop Killing Games," in an effort to "protect buyers against having products destroyed by the company that sold them."[6] This caught the attention of the California legislature, which was concerned about "consumers losing access to content."[7]

13.     The State of California addressed this exact concern by passing the Digital Property Rights Transparency Law, which ensures that "consumers clearly know and understand the nature of their transactions…includ[ing] the reality that they may not have genuine ownership of their purchase." California Bill Comments, A.B. 2426 Assem., 8/23/2024.

14.     In an effort to protect consumers and require companies to inform consumers that they are purchasing a license, not the digital good itself on online storefronts, the California legislature recently passed a law "requiring sellers of digital goods to provide an explicit disclosure for each purchase of a digital good informing the consumer of the true nature of their purchase, ensuring that consumers have a full understanding of exactly what they have bought." California Bill Analysis, A.B. 2426 Assem., 8/23/2024.

15.     The California legislature recognized that "[a]s retailers continue to pivot away from selling physical media, the need for additional consumer protections on the purchase of

---

[4] Kotaku, *New Law Will Force Companies to Admit You Don't Actually Own Digital Games*, Zack Zwiezen (Sept. 27, 2024), https://kotaku.com/california-ab-2426-digital-games-the-crew-new-law-psn-1851659641.

[5] https://www.eurogamer.net/ubisoft-delists-the-crew-with-servers-shutting-next-year

[6] https://www.eurogamer.net/stop-killing-games-aims-to-mount-political-and-legal-challenges-to-games-going-offline

[7] The Game File, New Law Will Change How Digital Games Are Sold, At Least In California, Stephen Totilo (Sept. 26, 2024), https://www.gamefile.news/p/california-ab2426-crew-call-of-duty?utm_source=post-email-title&publication_id=66124&post_id=149460139&utm_campaign=email-post-title&isFreemail=true&r=1rwbaf&triedRedirect=true&utm_medium=email.

---

digital goods becomes more important." *Id*. "When a consumer purchases an online digital good like a movie or TV show, they receive the ability to view the media at their leisure. *Id*. Often times, the consumer believes that their purchase has given them permanent ownership of that digital good, similar to how the purchase of movie on a DVD or a paperback book provides access in perpetuity. *Id*. In reality though, the consumer has only purchased a license, which, according to the seller's terms and conditions, the seller can revoke at any point." *Id*.

16.    The Law provides that:

(1) It shall be unlawful for a seller of a digital good to advertise or offer for sale a digital good to a purchaser with the terms "buy," "purchase," or any other term which a reasonable person would understand to confer an unrestricted ownership interest in the digital good, or alongside an option for a time-limited rental, unless either of the following occur:

(A) The seller receives at the time of each transaction an affirmative acknowledgment from the purchaser indicating all of the following:

(i) That the purchaser is receiving a license to access the digital good.

(ii) A complete list of restrictions and conditions of the license.

(iii) That access to the digital good may be unilaterally revoked by the seller if they no longer hold a right to the digital good, if applicable.

(B) The seller provides to the consumer before executing each transaction a clear and conspicuous statement that does both of the following:

(i) States in plain language that "buying" or "purchasing" the digital good is a license.

(ii) Includes a hyperlink, QR code, or similar method to access the terms and conditions that provide full details on the license.

Cal. Bus. & Prof. Code § 17500.6(b)(1).

17.    Under this law, "'digital good' means a digital audiovisual work, digital audio work, digital book, digital code, or digital application or game, whether electronically or digitally delivered or accessed." Cal. Bus. & Prof. Code § 17500.6 (a)(7).

18.    "These digital goods are often sold at almost the same price points to the physical copies of a digital good, like a DVD or a paperback book that has given them permanent ownership of that digital good." California Bill Comments, A.B. 2426 Assem., 8/23/2024. The reality is, "the consumer has only purchased a license, which, according to the seller's terms and conditions, the seller can revoke at any point." *Id.*

19.    This law expands on the restrictions set forth in California's False Advertisement Laws that make it unlawful for any person doing business in California to make false or misleading advertising claims. It makes it unlawful to "to advertise or offer for sale a digital good that a reasonable person would understand to cover an unrestricted ownership in the digital good." *Id.*

**GameStop Misrepresents the Nature of the Consumer's Ownership Rights of Digital Goods During The Purchase Process**

20.    Defendant's website, GameStop.com, is a digital storefront that gives consumers the option to purchase physical copies of video games or download their digital copies. GameStop advertises a variety of video games on its website and tells consumers they can "buy online." See Figure 1 below.



**Figure 1**

21.    For each video game listed on GameStop's website, it tells consumers they can "buy online," and "Pros, Save $25 When You Buy $250+." See Figure 2, below.



**Figure 2**

22.     If a consumer clicks on a particular game's listing, such as Figure 2, he is  taken to the game's listing page, which continues to say consumers can "**Buy**" and "buy online." See Figure 3A and 3B, next page. Nowhere on this page does Defendant indicate that a digital version of the game is fundamentally different than the physical copy. Instead, the listing page states that the game can be purchased in various Conditions: Digital, New, and Pre-Owned. *See id.* The New and Pre-Owned conditions refer to physical, tangible copies of the game, where consumers obtain the full bundle of sticks associated with the property ownership once they purchase the game.



**Figure 3A**

23.    If a consumer clicks the "Digital" version of the game on the game listing page, the screen then populates an advertisement right below the "Digital" button stating that the consumer will receive "+4% back on all purchases," and that, if he or she adds a protection plan, the plan can "replace your purchase." See Figure 3B. The page also continues to misleadingly represent that purchasing the Digital version of the game is like the physical copy by using an "Add to Cart" button.



**Figure 3B**

24. Nowhere on this pre-payment page is there an affirmative acknowledgement that the consumer understands that he or she is receiving a license, or a clear and conspicuous notice that the thing they are purchasing is a revocable license to access the digital good.

25. If a consumer clicks on the Add to Cart button, a side bar appears on the page that states "**People Also <u>Bought</u>**" other similar games. See Figure 4. Again, nowhere on this pre-payment side bar is there an affirmative acknowledgement that the consumer understands that he or she is receiving a license, or a clear and conspicuous notice that the thing they are purchasing is a revocable license to access the digital good. *See* Figure 4.



**Figure 4**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26.    If a consumer clicks the "View Cart & Checkout" button, they are taken to the checkout page. Nowhere on this pre-payment page is there an affirmative acknowledgement that the consumer understands that he or she is receiving a license, or a clear and conspicuous notice that the thing they are purchasing is a revocable license to access the digital good. *See* Figure 5.



**Figure 5**

27.    If a consumer clicks on the "Proceed to Checkout" button, they are prompted to create an account or sign in. Once completed, they are taken to a final page, where consumers can either click "Google Pay" or "Place Order" to complete their purchase of a revocable license. Nowhere on this page is there an affirmative acknowledgement that the consumer understands that he or she is receiving a license, or a clear and conspicuous notice that the thing they are purchasing is a revocable license to access the digital good. *See* Figure 6.



**Figure 6**

28.     The digital product's ephemeral nature is confirmed by the video game publisher's user agreement. The example in the Figures above included a copy of the *Pokémon Arceus* video game, which is published by Nintendo. Nintendo's User Agreement confirms that its "video games" are a "Nintendo Account Service" and that "[s]ubject to the terms of this Agreement, Nintendo grants you a non-exclusive, non-transferable, ***revocable license to use the Nintendo Account Service.***"[8] And whereas if consumer purchased a physical copy of the game, he could lend it to someone else to play, with a digital copy of the game, the consumer is "not allowed to lease [or] rent" the game.[9]

29.     In other words, at no point prior to the purchase is the consumer ever put on notice, in plain language, that the video game he is buying is just a license that can be revoked at any time. Nor is the consumer ever required to provide an affirmative acknowledgment that he or she knows the limited property rights he or she is receiving with the purchase of the digital video game.

30.     In contrast, many of GameStop's competitors comply with the law. For example, if a consumer purchases a digital video game through Steam, it provides "a clear and conspicuous statement that … [s]tates in plain language that 'buying' or 'purchasing' the digital good is a license." Cal. Bus. & Prof. Code § 17500.6(b)(1)(B). *See* Figure 7, next page.

---

[8] Nintendo, United States Nintendo Account User Agreement, https://accounts.nintendo.com/term/eula/US?lang=en-US.

[9] *Id*.

**Figure 7**

**CLASS ALLEGATIONS**

31.     **Class Definition:**  Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in California who have purchased a digital video game from GameStop.

32.     Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

33.     **Numerosity (Fed. R. Civ. P. 23(a)(1)):**  At this time, Plaintiff does not know the exact number of members of the aforementioned Class.  However, given the popularity of

Defendant's website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

34.    **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):**  There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

> a.  Whether Defendant used terms such as "buy," "purchase," or "add to cart" in connection with the sale of its digital video games;
>
> b.  Whether Defendant received an affirmative acknowledgment from class members compliant with  Cal. Bus. & Prof. Code § 17500.6(b)(1)(A); and
>
> c.  Whether Defendant provided clear and conspicuous notice to class members with  Cal. Bus. & Prof. Code § 17500.6(b)(1)(B).

35.    **Typicality (Fed. R. Civ. P. 23(a)(3)):**  Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased digital video games from GameStop without an express warning that they were receiving a license.

36.    **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class. Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiff has raised viable claims or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Class to address any steps that Defendant took.

37.    **Superiority (Fed. R. Civ. P. 23(b)(3)):**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the court system could not.  It would be unduly burdensome

1   to the courts in which individual litigation of numerous cases would proceed.  Individualized

2   litigation would also present the potential for varying, inconsistent, or contradictory judgments, and

3   would magnify the delay and expense to all parties and to the court system resulting from multiple

4   trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with

5   respect to some or all of the issues presented herein, presents few management difficulties,

6   conserves the resources of the parties and of the court system and protects the rights of each

7   member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class

8   action.

### COUNT I
**Violations of the California Unfair Competition Law**
**Bus. & Prof. Code §§ 17200 et seq.**

11   38.    Plaintiff incorporates by reference all of the foregoing paragraphs.

12   39.    Plaintiff brings this claim individually and on behalf of the Class.

13   40.    California Business and Professions Code § 17200 prohibits "any unlawful, unfair,

14   or fraudulent business act or practice."   The UCL allows "a person who has suffered injury in fact

15   and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. &

16   Prof. Code § 17204.  Such a person may bring an action on behalf of herself or himself and others

17   similarly situated who are affected by the unlawful and/or unfair business practice or act.

18   41.    By committing the acts and practices alleged herein, Defendant has violated

19   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210 by

20   engaging in unlawful, unfair, and fraudulent conduct. Specifically, Defendant violated the UCL's

21   proscription against engaging in **Unlawful Business Practices** by violating California Bus. & Prof.

22   Code §§ 17500.6(b)(1).

23   42.    California Business & Professional Code § 17500.6(b)(1) prohibits "a seller of a

24   digital good to advertise or offer for sale a digital good to a purchaser with the terms "buy,"

25   "purchase," or any other term which a reasonable person would understand to confer an

26   unrestricted ownership interest in the digital good."

43.    Defendant is a seller of digital goods because it sells digital video games on its website.

44.    Defendant's digital video games are digital goods under the statute. A "digital good" is defined as including a "digital code, or digital application or game, whether electronically or digitally delivered or accessed." Cal. Bus. & Prof. Code § 17500.6(a)(7). Defendant's digital video games can be downloaded by entering the code provided by Defendant after purchase into a game publisher like Xbox, Nintendo, PlayStation, Steam, Apple, Google Play, or others, which thereby allows the digital game to be downloaded.[10]

45.    Defendant advertises and offers for sale its digital games in a manner that conveys an unrestricted ownership interest in the digital good. Defendant offers its digital video games for sale using the terms "Buy," "buy online," "purchase," and "Add to Cart," as depicted in Figures 1 through 6 of this Complaint. Additionally, Defendant offers digital video games for sale by listing the game's digital status as a "Condition," on Figures 3A and 3B of this Complaint, such that by doing so, a consumer would think it held the same property rights as physical copies of the game. Plaintiff, and members of the Class, as a reasonable person viewing the website in order to make a purchase, would understand that the digital good offered and advertised by Defendant was being offered to consumers with an unrestricted ownership interest.

46.    California Business & Professional Code § 17500.6(b)(1) has two exceptions to this general prohibition of offering digital goods for sale using the terms like "buy" or "purchase." However, Defendant cannot fall into either of these exceptions. Defendant never received "an affirmative acknowledgment from the purchaser indicating: (i) that the purchaser is receiving a license to access the digital good; (ii) a complete list of restrictions and conditions of the license; (iii) That access to the digital good may be unilaterally revoked by the seller if they no longer hold a right to the digital good, if applicable." Cal. Bus. & Prof. Code § 17500.6(b)(1)(A). And Defendant never provided "a clear and conspicuous statement that does both of the following: (i) States in plain language that "buying" or "purchasing" the digital good is a license; (ii) includes a

---

[10] GameStop, *Frequently Asked Questions: Downloadable Content and Gift Cards*, https://www.gamestop.com/faq/.

hyperlink, QR code, or similar method to access the terms and conditions that provide full details on the license." Cal. Bus. & Prof. Code § 17500.6(b)(1)(B).

47.    Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

48.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

49.    Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

50.    Plaintiff and the members of the Class have suffered an economic injury that flowed from Defendant's violation of the law. Defendant's acts caused Plaintiff and Class members to overpay for video games under the belief that they owned them outright.  Had Defendant properly disclosed the true nature of the limited property rights it was conveying, it could not charge as much as it did for them, and it would need to reduce its prices to compete with other competitors, like Steam, who did disclose the true nature of the limited property rights they convey when they sold video games. Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

51.    Plaintiff and the members of the Class have suffered a substantial injury in fact and lost money by virtue of Defendant's acts of unfair competition, which caused them to overpay for videos under the belief that they owned them outright.   Had Plaintiff and class members known they were only obtaining revocable licenses to videos, they would have paid substantially less for those licenses.  Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

52.    Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful

1    course of conduct.  The public and the Class are subject to ongoing harm because the unlawful

2    and/or unfair business practices.

3    　　　　53.　　　Plaintiff and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203

4    of all amounts that Defendant charged or caused to be charged to Plaintiff's and the Class's

5    accounts in connection with the videos purchased, or at a minimum, the price premium they paid.

6    Defendant should be required to disgorge all the profits and gains they have reaped and restore

7    such profits and gains to Plaintiff and the Class, from whom they were unlawfully taken.

8    　　　　54.　　　Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and members of the Class

9    seek a court order enjoining Defendant from such future misconduct, and any other such orders that

10   may be necessary to rectify the unlawful business practices of Defendant.

11   　　　　55.　　　Plaintiff brings this action as private attorneys general and to vindicate and enforce

12   an important right affecting the public interest.  Plaintiff and the Class are therefore entitled to an

13   award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

14   　　　　56.　　　Plaintiff has no adequate remedy at law for this claim.  There is no commensurate

15   legal remedy for Plaintiff's requested relief under this count.  Alternatively, legal remedies

16   available to Plaintiff are inadequate because they are not "equally prompt and certain and in other

17   ways efficient" as equitable relief.  *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937);

18   *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a

19   possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water*

20   *Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the

21   jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and

22   efficacious to the end in view … It must reach the whole mischief and secure the whole right of the

23   party in a perfect manner at the present time and not in the future"). Furthermore:

24   　　　　　　　a)　To the extent damages are available here, damages are not equally certain as

25   　　　　　　　　　restitution because the standard that governs ordering restitution is different than

26   　　　　　　　　　the standard that governs damages. Hence, the Court may award restitution even if it

27   　　　　　　　　　determines that Plaintiff fails to sufficiently adduce evidence to support an award of

28   　　　　　　　　　damages.

b) Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks such relief here.

c) Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

57.    Plaintiff also lacks an adequate remedy at law to prevent future harm.

## COUNT II
### Violations of California's False Advertising Law ("FAL"),
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

58.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

59.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

60.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,  …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

61.    Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general public concerning Defendant's digital video games, as well as circumstances and facts connected to such products, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or

misleading.  Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those digital goods as advertised.

62.     Defendant's statements include but are not limited to representations and omissions that made consumers reasonably believe the digital videos games Defendant's offered on sale carried with them an unrestricted property interest. In particular, Defendant offers its digital video games for sale using the terms "Buy," "buy online," "purchase," and "Add to Cart," as depicted in Figures 1 through 6 of this Complaint. Additionally, Defendant offers digital video games for sale by listing the game's digital status as a "Condition," on Figures 3A and 3B of this Complaint, such that a consumer would think it held the same property rights as physical copies of the game.

63.     Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

64.     Plaintiff and the members of the Class were deceived by Defendant's statements and omissions made online when they paid for their digital goods, and there is a strong probability that other California consumers and members of the public were also or are likely to be deceived as well.  Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions.  Plaintiff and other members of the Class did not learn about the true limited nature of the property interests they received until after they had already paid for Defendant's digital goods.  They relied on Defendant's statements and omissions to their detriment.

65.     Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the digital goods on the same terms if the true facts were known about the product and the digital goods do not have the characteristics as promised by Defendant.

66.     Plaintiff, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property;

1    disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable

2    attorneys' fees.

3        67.    Plaintiff also seeks equitable relief, including restitution, with respect to their FAL

4    claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following

5    allegations in this paragraph as an alternative to any contrary allegations in their other causes of

6    action, in the event that such causes of action will not succeed.  Plaintiff and the California

7    Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under

8    other causes of action and will lack an adequate remedy at law, if the Court requires them to show

9    classwide reliance and materiality beyond the objective reasonable consumer standard applied

10   under the FAL, because Plaintiff may not be able to establish each California Subclass member's

11   individualized understanding of Defendant's misleading representations as described in this

12   Complaint, but the FAL does not require individualized proof of deception or injury by absent class

13   members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012)

14   ("restitutionary relief under the UCL and FAL 'is available without individualized proof of

15   deception, reliance, and injury.'").  In addition, Plaintiff and the California Subclass may be unable

16   to obtain such relief under other causes of action and will lack an adequate remedy at law, if

17   Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence),

18   because the FAL imposes no such *mens rea* requirement and liability exists even if Defendant

19   acted in good faith.  Restitution and/or injunctive relief may also be more certain, prompt, and

20   efficient than other legal remedies requested herein.   The return of the full premium price, and an

21   injunction requiring the return of the full premium price, and an injunction requiring adequate

22   disclosure ownership rights conveyed to consumers prior to the execution of purchase will ensure

23   that Plaintiff and the California Subclass Members are in the same place they would have been in

24   had Defendant's wrongful conduct not occurred, *i.e.*, the position to make an informed decision

25   about the purchase of the digital goods absent omissions and misrepresentations with the full

26   purchase price at their disposal.

27        68.    Plaintiff seeks, on behalf of himself and those similarly situated, an injunction to

28   prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising

and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to seek legal redress repeatedly and continuously in order to recover monies paid to Defendant to which they are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### COUNT III
**Violation of California Consumer Legal Remedies Act**
**Cal. Civil Code § 1750 *et seq*.**

69.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

70.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

71.    At the time Plaintiff and members of the Class and Subclasses purchased their videos from APV, Defendant did not fully disclose the limited property interest it was conveying in the videos.

72.    This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

73.    Plaintiff and members of the Class are consumers who purchased Defendant's digital audiovisual works.  Accordingly, Plaintiff and members of the Class are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

74.    At all relevant times, Defendant's digital audiovisual works constituted "goods," as that term is defined in Cal. Civ. Code § 1761(a). Defendant's *Elden Ring—Nightreign* game can either be purchased in a digital version, or in a physical disc version for Playstation 5 or Xbox Series X through defendant's website. *See* https://www.gamestop.com/pc-gaming/pc-

1  games/products/elden-ring-nightreign---pc-steam/424117.html. In the alternative, Defendant's

2  digital audiovisual works constitute a service as that term is defined in Cal. Civ. Code § 1761(b)

3  because the games provide an interactive entertainment service that allows users to play the game

4  by themselves or with other players.

5       75.    At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ.

6  Code § 1761(c) because it is a corporation.

7       76.    At all relevant times, Plaintiff's purchases of Defendant's digital audiovisual works,

8  and the purchases of other Class members, constituted "transactions," as that term is defined in Cal.

9  Civ. Code § 1761(e).

10       77.    The conduct alleged in this Complaint constitutes unfair methods of competition

11  and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was

12  undertaken by Defendant in transactions intended to result in, and which did result in, the sale of

13  goods to consumers.

14       78.    The policies, acts, and practices described in this Complaint were intended to and

15  did result in the sale of Defendant's Products to Plaintiff and the Class.  Defendant's practices,

16  acts, policies, and course of conduct violated the CLRA § 1750 *et seq.*, as described above.

17       79.    Defendant advertised goods or services with intent not to sell them as advertised in

18  violation of California Civil Code § 1770(a)(9).

19       80.    Defendant also represented that transaction involving its digital audiovisual works

20  conferred legal rights, remedies, or obligations that it does not have in violation of California Civil

21  Code § 1770(a)(14).

22       81.    Plaintiff and members of the Class suffered injuries caused by Defendant's

23  misrepresentations because (a) Plaintiff and members of the Class would not have purchased the

24  digital audiovisual works on the same terms if they had known the true facts; (b) Plaintiff and

25  members of the Class paid a price premium for the videos believing they owned them outright.

26       82.    Wherefore, Plaintiff seeks injunctive relief for this violation of the CLRA.

27       83.    On January 7, 2026, a CLRA demand letter was sent to Defendant's address via

28  certified mail (return receipt requested), that provided notice of Defendant's violations of the

CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgment against Defendant, on behalf of herself and all others similarly situated, as follows:

(a)    For an order certifying the Classes pursuant Fed. R. Civ. P. 23, naming Plaintiff as representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)    For an award of damages to the extent available;

(e)    For an award of restitution and disgorgement of profits in an amount to be determined at trial;

(f)    For punitive damages, as warranted, in an amount to be determined at trial;

(g)    For prejudgment interest on all amounts awarded; and

(h)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of any and all issues so triable.

Dated: January 8, 2026                          Respectfully submitted,

                                                **BURSOR & FISHER, P.A**.

                                                By: */s/ Stefan Bogdanovich*

                                                Stefan Bogdanovich (State Bar No. 324525)
                                                1990 North California Blvd., 9th Floor
                                                Walnut Creek, CA 94596
                                                Telephone:  (925) 300-4455

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile: (925) 407-2700
Email: sbogdanovich@bursor.com

**BURSOR & FISHER, P.A**.
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

*Attorneys for Plaintiff*